## Chicago Exchange Building Co. v. Nels Nelson.

98    189
a197s  334

1. PASSENGER ELEVATORS—*Negligence of Persons upon, a Question of Fact.*—That a person upon a passenger elevator did not request the conductor to stop for him, where he attempted to alight, is not controlling. It is a matter of no consequence whether or not the elevator was stopped at his request, where the act of stopping was productive of no injury. The elevator being stopped at a place where passengers were in the habit of alighting, such person had the right to alight without making any request or obtaining any permission in that regard, and if the servants in charge of the elevator knew, or by the exercise of due care would have known, that such person was intending to alight, it was negligence on their part to start the elevator before he had a reasonable time in which to do so.

2. SAME—*What Acts Do Not Constitute Contributory Negligence.*—The fact that a person upon a passenger elevator fails to look particularly to see if the conductor is about to close the door, which he has opened for the purpose of admitting passengers, does not necessarily constitute contributory negligence upon his part.

3. SAME—*What is Not Contributory Negligence as a Matter of Law.*—It is not, as a matter of law, contributory negligence, in a person upon a passenger elevator, without stopping to look and listen, to attempt to pass through a door opened by the conductor.

4. SAME—*What Persons upon Passenger Elevators May Assume.*—An elevator for the carriage of persons is not like a railroad crossing at a public highway, supposed to be a place of danger, to be approached

with caution, but on the contrary it may be assumed that, when the door of the elevator is thrown open by the servant in charge, it is a place which may be safely entered without stopping to look, listen or make a special examination.

5.   SAME—*Degree of Care and Diligence Required.*—The law imposes upon the proprietors of passenger elevators the exercise of the highest degree of care and diligence for the safety of passengers which is practically consistent with the efficient use and operation of such modes of transportation.

6.   SPECIAL INTERROGATORIES—*Calling for Answers as to the Ultimate Fact of Negligence.*—A special interrogatory, as follows, "Was the defendant guilty of negligence causing the injury in this case, and if so, in what did such negligence consist?" is properly refused, as it not only calls for an answer as to the ultimate fact of negligence of the defendant, but also calls upon the jury to formulate a statement of the evidentiary facts establishing such negligence.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in this court at the March term, 1901. Affirmed. Opinion filed November 21, 1901.

**Statement.**—This suit is brought by appellee to recover for personal injuries sustained, as is claimed, through the negligence of appellant.

Appellee had occasion to visit, upon business, the office building owned and managed by appellant. In leaving the eighth floor of the building, where his business had taken him, appellee took the passenger elevator, operated by appellant for the accommodation of its tenants and the public. He intended to descend to the ground floor. The evidence presented at the trial tended to show that when the elevator reached the second floor the conductor threw open the door of the elevator shaft upon that floor and appellee, supposing that he had reached the ground floor, undertook to pass from the elevator to the hall-way, which was upon the level of the elevator as it stopped; that while appellee was in the act of passing from the elevator the conductor started the elevator toward the ground floor; that the motion of the elevator caused appellee to fall backward, partly within the elevator, but with his foot and part of his leg without. In descending, the top of the doorway of the elevator came down upon appellee's leg and broke

it.   Appellee was a witness in his own behalf and described the occurrence as follows :

" I was alone with the man that run the elevator, and after I boarded the elevator he went down with a fast speed, passing floor after floor, and finally he stopped at a floor and threw the door wide open, and one man comes and walks in, and as he walks in I walked out, so that the man walked in, walked in between me and the elevator man; and just when I was in the middle of the door so that my foot was on the ledge, partly on the elevator, down he goes without trying to close the door, any warning at all, and I got caught between the top part of the elevator and floor, in such way that my foot stood on the ledge of the floor like this (indicating), and the elevator came right down here, and it was inside, the top part of the elevator, and struck me about three inches inside of the knee-cap.   *   *   *   I didn't know at the time on what floor of the building it was I was hurt, but I know now; it should have been the second floor, but I thought it was the lower floor, as I saw the elevator slack up and people getting out; and I saw two men at least, in uniform caps, and I thought it was the lower floor so I had to get out.   I can't say that I know how many elevators there are in that building, but I have seen that the elevator I was in was No. 9; there can not be less then ten.   These elevators are situated, one row on each side of the hall; that makes two rows, right opposite each other.   As the door was opened, I looked out; I saw people in the hall between the two elevators on the floor, coming out of the elevator that had stopped right opposite on the other side.   It was only the caps of the men in uniform that I paid any attention to.   Before he stopped, the elevator man did not say anything.   He did not call the floor.   *   *   *   Before I started I did not look to see whether the door was closing or not.   I didn't pay any attention.   I thought it was the lower floor and that he was going up again, so that I didn't think of any such thing at all; didn't think of any danger.   I didn't look to see whether the door was closing before I stepped out."

Monroe, a witness called by the appellant, testified that he got upon the elevator at the third floor; that there was no other person upon the elevator except appellee and witness and the conductor; that the conductor stopped at the second floor in response to two men upon the hallway of that

floor who had called out "down;" that as the conductor stopped he called out "down" and opened the door; that the two men in the hallway took another car; that "just as the other elevator picked up these men, Mr. Nelson started to go out of the elevator; the elevator door started to close, he made a start to go out, and he was caught by the door."

The conductor of the elevator testified:

"At the time I stopped at the second floor Mr. Nelson was standing right near the doorway, within a half foot of the entrance to the door. I simply put my head out of the door and looked and stepped back. When I started the car down, after stopping at the second floor, I was between one and two feet from Mr. Nelson. I simply said 'Down,' 'Going down,' to see if there was any one there; that is all. I called out into the hall, 'Going down.' Mr. Nelson first attempted to leave the car when it was in motion, about two feet or more below the floor going down. Prior to the time that I started the car downward I had no intimation from Mr. Nelson that he wished to leave the car at that floor, or that he was intending to do so. There was nothing in his action or movements that indicated any intention on his part to attempt to leave the car at the floor. I did not do or say anything to indicate, or from which Mr. Nelson could infer, that the car had reached the lower floor of the building. I made an effort to prevent Mr. Nelson from being injured when I discovered that he had attempted to leave the car. I tried to throw my hand in front of him, but it was too late, and I grabbed him by the tail of the clothes, he got up there so quickly; I stopped the car immediately, that is, as quick as I could. * * * I started to close the door before starting downward from the second floor. The door had not been wholly closed at the time when he started to leave the car. * * * I stated in my direct examination that the car was about four feet below the level of the door when Mr. Nelson attempted to alight. The door was between ten and fourteen inches open at the time. The door was not actually closed at the time I succeeded in stopping the car. At the time I succeeded in stopping the car the door was about eight inches open."

There was no other witness except these three who testified as to the occurrence.

Counsel for appellant presented to the court certain written interrogatories to be submitted to the jury for their special answer. One was as follows:

"Was the defendant guilty of negligence causing the injury in this case, and if so, in what did such negligence consist?"

The court refused to submit this interrogatory to the jury.

Among other instructions to the jury tendered by counsel for appellee and given to the jury by the court, was the following:

(3.) "The court instructs the jury that even if the plaintiff made a mistake and was alighting from the elevator at a floor which was not his destination, this fact will not of itself, as a matter of law, prevent his recovering in this case; but if you believe from the evidence that under the instructions of the court the plaintiff, while attempting to alight from the elevator, was exercising ordinary care for his own safety while so doing, and if you further believe from the evidence and under the instructions of the court that the defendant was guilty of negligence as charged in the first count of the declaration, then you should find in favor of the plaintiff, if such negligence caused injury to the plaintiff as charged in that count."

The jury returned a verdict for the appellee and assessed his damages at $2,000.

From a judgment thereon this appeal is prosecuted.

ALEXANDER CLARK, attorney for appellant.

M. V. GILBERT and PLINY B. SMITH, attorneys for appellee.

MR. JUSTICE SEARS delivered the opinion of the court.

The learned counsel for appellant urge that the judgment should be reversed upon the following grounds:

1st. That the court erred in refusing to instruct the jury to find the defendant not guilty.

2d. The court erred in giving the third instruction for the plaintiff; and

3d. The court erred in refusing to propound to the jury

a certain special interrogatory, as requested by the defendant.

The ground first presented raises the question as to the sufficiency of the evidence to sustain the recovery. Three witnesses only testify to the occurrence which caused the injury. One, the conductor, testified to facts which, if true, would bar a recovery, for they would clearly establish contributory negligence upon the part of appellee as a cause of the injury. On the other hand, the testimony of appellee would, if credited, establish facts which would sustain the recovery. If he is to be believed, the employe of appellant, intrusted with the management of one of the cars of its passenger elevator, after he had opened the door of the elevator shaft upon the second floor where the car had stopped, without waiting to see if his passenger, appellee, was about to alight, and without even wholly closing the door of the shaft, started his car downward while appellee was in the act of alighting. These facts, together with the resulting injury to appellee, would warrant the conclusion of the jury that appellant, through the conduct of its agent, was guilty of actionable negligence.

The testimony of the third witness is not satisfactory in clearness as corroborating either of the other two. From his testimony it might be inferred that no other person entered the elevator car at the second floor; and that the car was stationary when appellee started to leave it. But it is by inference only that his testimony goes to establish either fact. He states that he got upon the car and that there was no other person on the car except witness, appellee and the conductor. Whether he meant thereby to contradict the positive statement of appellee that another person did get upon the car as he attempted to leave it, or merely to give the passengers upon the car at the third floor, where he entered it, is problematical. Nor did the conductor expressly contradict the statement of appellee in this behalf.

From the testimony of Monroe it can not be definitely determined whether appellee is truthful in stating that the

car had stopped when he started to leave it, or the conductor in stating that the car was moving downward. The question of the credibility of these witnesses was a matter for the determination of the jury, and we are not prepared to hold that the conclusion reached by them is manifestly against the weight of the evidence or lacking the support of a preponderance of it.

. It is contended by counsel that the evidence establishes that appellee was guilty of negligence contributing to his injury, and therefore that he can not recover. We are of opinion that this too was for the jury and not for the court to determine upon the facts presented. It can not, we think, be held that as a matter of law the appellee's conduct, if his testimony is credited, establishes contributory negligence. The fact that he did not request the conductor to stop for him upon the second floor, is not controlling. C. W. D. Ry. v. Mills, 105 Ill. 63.

In that case the Supreme Court said in reference to the management of a street car :

" It was of no consequence whether the car was stopped at the instance of the plaintiff or not, since the act of stopping was productive of no injury, and is in no respect complained of. It is sufficient while the car was stopped, parties were getting off, and the plaintiff, while attempting also to do so, with due care, was injured by reason of the negligent starting of the car by the defendant's servants. Nor could it be material to determine whether plaintiff asked or obtained permission of the defendant or its servant to alight. The car being stopped, from whatever cause, at a place where passengers were in the habit of alighting, she had the undoubted right to alight without making any request or obtaining any permission in that regard, and if the defendant's servants knew, or by the exercise of due care would have known of it, it was negligence on their part to start the car before she had a reasonable time in which to alight."

Nor does the fact that appellee did not look particularly to see if the conductor was about to close the door necessarily constitute contributory negligence upon his part. Tousey v. Roberts, 114 N. Y. 312.

In that case the New York court said:

"The door to the car of the elevator being thrown open by a boy who had been accustomed to throw it open, it was not, as a matter of law, contributory negligence in the plaintiff to pass through the door without stopping to look and listen. An elevator for the carriage of persons is not, like a railroad crossing at a highway, supposed to be a place of danger, to be approached with great caution; but, on the contrary, it may be assumed when the door is thrown open by an attendant, to be a place which may be safely entered without stopping to look, listen or make a special examination."

But it is urged that the fact that appellee intended to go to the ground floor and by mistake undertook to alight at the second floor, supposing it to be the ground floor, constituted negligence upon his part which was a cause of, or contributed to the injury. This contention presents the question of the correctness of the instruction complained of by counsel for appellant.

We are of opinion that the instruction was proper. The question of contributory negligence of appellee went only to his exercise of ordinary care in the manner of getting off the elevator car, irrespective of any error upon his part in failing to wait until he had reached his destination before alighting. If a person upon a public street of a city was injured through negligence of the city in maintaining the street, it could scarcely be presented as a bar to a recovery of damages for such negligence that he was by inadvertence upon a street other than the one he had intended to travel upon. We are of opinion that the learned trial court properly instructed the jury that the question of contributory negligence in this case related to the conduct of appellee in the manner of attempting to alight from the elevator car on the second floor, irrespective of his error in mistaking that floor for his destination.

It is also contended that the evidence is insufficient to sustain the verdict because no showing is made that it is a negligent act to start an elevator car away from a floor of a building before the door is closed to prevent persons from attempting to enter or leave the car.

The declaration charges and the evidence establishes that appellant was operating this elevator car as a carrier of passengers. The law imposed upon it the exercise of the highest degree of care and diligence for the safety of its passengers which was practically consistent with the efficient use and operation of that mode of transportation. Hartford D. Co. v. Sollitt, 172 Ill. 222; Springer v. Ford, 189 Ill. 430.

It was for the jury to determine upon the facts of this case whether such care had been exercised, and this they could do without the aid of any expert testimony as to the usual conduct of elevator conductors in the matter of closing the doors of car or elevator shaft. If the jury were warranted in finding that the manner in which this conductor operated this car was negligent, then no evidence as to customary conduct of elevator conductors in general or convenience of management could affect the conclusion.

The refusal of the court to submit to the jury the interrogatory tendered was right. It not only called for an answer as to the ultimate fact of negligence of the defendant, but it also called upon the jury to formulate a statement of the evidentiary facts establishing that negligence. It should have been limited to the first question. The court properly refused it as framed. Judy v. Sterrett, 153 Ill. 94.

No other complaint is made as to matters of procedure, and there is no assignment of error argued which questions the amount of the recovery.

The judgment is affirmed.