ETHEL W. TAYLOR *vs*. DU PONT BUILDING CORPORATION, a corporation of the State of Delaware.

1. TRIAL—DIRECTION OF VERDICT—WHEN PROPER.

When the evidence in a case is admitted to be true or not controverted and the law as applied to the evidence is productive of but one legal result, as a general rule it becomes the duty of the court to direct a verdict accordingly.

2. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—DUTY TO USE DUE CARE.

Where deceased had unloaded a number of boxes onto an elevator in defendant's building and taken them to an upper floor and returned preparatory to unloading more boxes in the elevator entrance which was lighted, it was his duty to see whether the elevator doors were open.

3. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—DUTY TO USE DUE CARE—SUDDEN EMERGENCY.

In such case, the falling of the boxes did not present a sudden emergency, calculated to produce fright or affect his judgment, so as to excuse his failure to observe that the elevator doors were open.

4. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—DUTY TO USE DUE CARE—EVIDENCE.

Evidence *held* to show that deceased, who fell into an elevator shaft in avoiding falling boxes, was guilty of contributory negligence so as to bar recovery.

(*December* 1, 1915; *November* 8, 1916.)

JUDGES BOYCE and RICE sitting.

*W. W. Knowles* for plaintiff.

*Robert H. Richards* and *Aaron Finger* for defendant.

Superior Court, New Castle County.

SUMMONS CASE, No. 88, March Term, 1915.

On error, in Supreme Court, No. 4, June Term, 1916.

CURTIS, Chancellor; PENNEWILL, Chief Justice and CONRAD and HEISEL, J. J., sitting.

Action by Ethel W. Taylor, widow of Herbert S. Taylor, against Du Pont Building Corporation, to recover damages for the death of her husband, alleged to have been caused by the negligence of the defendant corporation. Plaintiff claimed in her narr. damages for loss of support and for loss of consortium.

Directed verdict for defendant. Motion for new trial. Denied. Plaintiff brings error. Affirmed.

The undisputed testimony was substantially as follows: That about three o'clock in the afternoon of February 8, 1915, Herbert S. Taylor, the plaintiff's husband, was employed and had been for two years, as a helper for T. Brothers, haulers of freight in the City of Wilmington, and was at the time assisting Z. and Q. also employed by said haulers, in delivering certain cases or boxes measuring one foot in the shortest dimension, three to three and a half feet wide and about four feet high, to the Atlas Powder Company, whose offices were located on the second floor of the Du Pont Building. That they had backed up their wagon to the vestibule leading to the freight elevator on the western side of the Du Pont Building, and had taken three of the cases from the wagon through the vestibule and placed them in the elevator, which was operated by one D., an employee of the defendant company; that when the cases had been placed in the elevator and the three men had entered the same either D., the operator, closed the elevator doors or the same were closed by one of the three at the operator's request, and the elevator proceeded to the second floor where the cases were unloaded, and the three men returned in the elevator to the vestibule. That upon their return they found that their team or wagon had been moved away from the elevator vestibule by employees of the F-M. Co., who had placed on the vestibule platform certain chairs and a desk preparatory to taking same up to the seventh floor of the Du Pont

Building on the elevator. That the driver who was delivering the cases to the Atlas Company remonstrated with the F-M. employees about moving his wagon before he had unloaded all of his cases and proceeded to back his team up towards the elevator vestibule, the F-M. employees in the meantime placing their furniture in the elevator and taking it to the seventh floor. That while the team was being backed the cases were standing on edge toward the front part of the wagon body which was, including the tailboard, about fourteen feet long; that Taylor was standing in the vestibule leading to the elevator either near the west wall or leaning against said wall and about central between the outer edge of the vestibule and the elevator shaft, with his back toward the elevator shaft looking towards the wagon as it backed up. That the platform or vestibule in which Taylor stood occupied a space of about seven by ten feet, with solid brick walls on the north and south sides, the vestibule doors which were open back against said walls, being located on the west or front and to the rear, or east, was the elevator shaft; that the doors of the elevator when open overlapped the open vestibule doors; that at no time after coming down from the Atlas Powder Company in the elevator did Taylor look in the direction of the elevator shaft. That in backing the wagon one of the cases started to topple over towards the rear and the driver called to Taylor "Look out Red," just as the case fell in the wagon the end being within a few feet of the tailboard; that Taylor backed in the direction of the elevator shaft, the doors of which were open, and fell down the elevator shaft, from which he was later removed and taken to the Delaware Hospital where he died from the injuries received within a few hours thereafter.

It was not affirmatively shown that Taylor had ever been in the elevator before the day of the accident. It was also testified that the elevator vestibule was sufficiently light to distinguish the features of a person, and light enough for Z. when standing several feet away on the outside to see through the vestibule and to observe that the elevator doors were open.

Mr. Richards, at the conclusion of plaintiff's testimony, moved for a nonsuit, on the ground that the evidence of the plain-

tiff discloses clearly that the decedent was not, at the time when the accident occurred, in the exercise of due care and caution, but was guilty of contributory negligence, citing *Dreier v. McDermott*, 157 *Iowa*, 726, 141 *N. W.* 315, 319, 50 *L. R. A.* (*N. S.*) 566; *Coleman v. Smith Co.*, 30 *R. I.* 250, 74 *Atl.* 915, 916; *Saunders v. Smith Realty Co.*, 84 *N. J. Law*, 276, 86 *Atl.* 404; *Neylon v. Phillips*, 179 *Mass.* 334, 60 *N. E.* 616; *Casey v. City of Malden*, 163 *Mass.* 507, 40 *N. E.* 849, 47 *Am. St. Rep.* 473; *Patterson v. Hemenway*, 148 *Mass.* 94, 19 *N. E.* 15, 12 *Am. St. Rep.* 523; *City of Peoria v. Adams*, 72 *Ill. App.* 663, 668.

Mr. Knowles, for plaintiff, contended that the evidence clearly showed that the defendant was guilty of gross negligence on its part in converting a place which the deceased had a right from his knowledge and experience to assume was a safe place, into one of great danger which negligence was the proximate cause of the decedent's injuries and death, and that there was no evidence that showed that the decedent was not in the exercise of due care at the time of the accident.

RICE J., delivering the opinion of the court below:

We have very carefully considered the arguments of counsel for and against the motion for a nonsuit, in connection with the evidence in the case, and we are now prepared to announce our decision.

Neligence is the gist of this action brought by the plaintiff to recover damages for the death of her husband. Before she is entitled to recover, it is necessary for her to both allege and prove that the negligence of the defendant was the cause of the accident which resulted in her husband's death. Contributory negligence of the deceased when it appears from the evidence in behalf of the plaintiff, or when proved by the defendant, will defeat the plaintiff's right of recovery.

It is a well settled principle of law in actions for personal injuries such as this, that a motion for a nonsuit will be granted when it affirmatively appears, from the evidence produced by the plaintiff, that the deceased was guilty of negligence at the time of the accident which proximately contributed thereto.

Opinion—Charge—Verdict.

It is also a principle of law that the deceased is presumed to have been in the exercise of due care at the time of the accident. This is a presumption, however, which may be rebutted by evidence introduced by the plaintiff, as well as by evidence introduced by the defendant.

Applying these well settled principles of law to the evidence of the present case, the court are clearly of the opinion that te deceased, standing for some time in the limited space between the storm doors and the elevator shaft, had the opportunity, if he had exercised the due care of a reasonably prudent person, to observe and know that the elevator doors were open. It cannot be urged for him that he did not know those things which by a reasonable use of his senses he should have known. If he did know, or by the exercise of due care should have known, that the elevator doors were open, then it was his duty to look where he was stepping as he approached the elevator shaft.

It cannot be urged as an excuse for his not performing his duty in this respect that he backed into the elevator shaft.

If he did look he must have seen that the shaft was open, or if he did not look as under the circumstances it was his duty to do, he was in either case guilty of contributory negligence in stepping into the open shaft.

The court are convinced that it affirmatively appears from the evidence produced by the plaintiff, that her husband was guilty of contributory negligence proximately entering into and contributing to the accident which resulted in his death.

Under our finding it is our duty to grant the motion and direct that a nonsuit be entered.

Counsel for plaintiff refusing to accept a nonsuit, the court by Rice, J., instructed the jury:

For the reasons we have assigned in granting the motion for a nonsuit, which the plaintiff has refused to accept, we direct you to find a verdict in favor of the defendant.

Verdict for defendant

Subsequently at the same term, a motion was made for a new trial, the grounds thereof being:

1.  That the verdict was (a) against the law; (b) against the evidence; and (c) against the weight of the evidence;

2.  That this Honorable Court, in the trial of the case, erred in charging the jury, as follows:

"For the reasons we have assigned in granting the motion for a nonsuit, which the plaintiff has refused to accept, we direct you to find a verdict in favor of the defendant."

3.  That the court's finding on the motion for a nonsuit, being also the ground for the direction to the jury to bring in a verdict for the defendant, to wit:

"The court are convinced that it affirmatively appears from the evidence produced by the plaintiff, that her husband was guilty of contributory negligence proximately entering into and contributing to the accident which resulted in his death,"

was erroneous and contrary to the facts.

4.  That the testimony introduced by the plaintiff in the case was sufficient to entitle her to go to the jury upon the issue as to the defendant's negligence.

5.  That, on the facts shown, the question of contributory negligence was a question for the jury.

6.  That all of plaintiff's testimony excluded by the court, to which exceptions were taken by the plaintiff, was material to plaintiff's case and should have been admitted.

*Levin Irving Handy* became associated with counsel for plaintiff.

After hearing argument on the motion, and maturely considering the same, the court by Rice, J., announced: The court have considered the argument of counsel and the evidence in the case, and we are firmly of the opinion that the motion for a new trial should not be allowed.

Whereupon counsel for plaintiff took a bill of exceptions, and subsequently sued out a writ of error.

Writ of Error—Arguments.

Argued before CURTIS, Ch., PENNEWILL, C. J., and CONRAD and HEISEL, JJ.

The errors assigned were: That the court erred (1) in directing the jury to return a verdict for the defendant; (2) in charging the jury upon refusal of plaintiff to accept a nonsuit, as follows: "For the reason we have assigned in granting the motion for a nonsuit, which the plaintiff has refused to accept, we direct you to find a verdict in favor of the defendant;" and (3) in not submitting to the jury, under the testimony for the plaintiff, the question as to whether or not the defendant was guilty of negligence and liable to the plaintiff.

### ARGUMENT OF COUNSEL FOR PLAINTIFF IN ERROR.

The debatable question before the court is whether or not the record discloses evidence sufficient to rebut the presumption of law that the deceased was in the exercise of due care at the time of the accident, and to establish contributory negligence, justifying the trial court in taking the case from the jury.

Contributory negligence is not attributable to one who, in the effort to avoid immediate danger in the exigency of the moment, suddenly and without time for reflection puts himself in the way of other peril without fault on his part.

Witness Ziegler says: "He (meaning Quinn) backed it (meaning the wagon) up and a case went to fall down and I hollered out to him (meaning Taylor) 'Look, out, there goes the cases,' and he stepped back to get out of the road of them."

While Taylor was standing on the platform the wagon containing these four large cases or boxes standing on end was backed close to him; that the boxes commenced to fall over in the wagon in his direction; that Ziegler called out to him; that suddenly, to avoid apparent and immediate danger, Taylor started backward and fell into the open shaft.

It is an established rule of law, that when one is required to act suddenly and in the face of imminent danger, he is not required to exercise the same degree of care as if he had time for deliberation and the full exercise of his judgment and reasoning faculties. And this is especially true, where the peril has been caused by the

fault of another. *29 Cyc.* 521; *Eaton v. Wil. City Ry.*, 1 *Boyce* 435 (441) and *Simeone v. Lindsay*, 6 *Penn.* 224.

The reasonableness of this doctrine is illustrated by the case at bar. Taylor stood very near to an open elevator shaft. Large heavy cases or boxes in a wagon within a few feet of him began to fall towards him. A fellow servant uttered a cry of warning. Whether he was or was not aware that the elevator shaft was open behind him, or might be open, it was almost inevitable that he should start to step back.

"Where the negligence of a third party and of the defendant are contributory causes leading to a position of sudden danger to the plaintiff, the latter's ill-advised action under the spur of necessity does not amount to negligence upon his part sufficient to defeat a recovery." *Akers v. City of New York*, 35 *N. Y. Sup.* 1099; *Dyer v. Railway Co.*, 71 *N. Y.* 228.

The trial court was of the opinion that because Taylor was standing for some time in the limited space between the storm doors and the elevator shaft, he had the opportunity, if he had exercised the due care of a reasonably prudent person, to observe and know that the elevator doors were open. It does not follow, that Taylor had reason to suppose that the elevator car had left its station at that floor. It seems to us more reasonable to hold that Taylor had a right to presume that the operator of the elevator car would not remove it from its place until he had previously closed the elevator doors.

It seems certain that Taylor's knowledge as to whether the doors were or were not open did not and could not notify him that there was an elevator shaft extending below the ground floor in the building. He went up in the elevator to the second floor. There he helped to deliver three cases or boxes to the Atlas Powder Company's rooms. He returned on the elevator to the ground floor and came out on the platform. At no time does it seem possible for him to have observed and seen or known of any shaft for the elevator extending below the ground floor. Unless such knowledge is imputed to Taylor, it cannot be construed as negligence for him to step backwards through the open elevator doors. How could the fact that the doors were open bring to his mind

knowledge that the elevator car had been removed from its position?

The question of the contributory negligence of Taylor *vel non* must be considered in the light of the duties which he was attempting to perform at the time of the accident. He was the servant of Tyson Brothers and he was, so far as the building is concerned, its elevator and its elevator shaft, in the position of an invitee. He was invited there for the purpose of delivering certain cases or boxes to one of the tenants in the duPont Building. His duty and work were such as to call his attention away from the operation of the elevator. He had a right, as an invitee, to presume that the defendant corporation would have its servant attend to the elevator and its operation with all due care. Taylor was acting as a prudent worker ought to act. He kept his eyes and attention on his co-workers when they were backing up the wagons to the platform. He was standing on the platform ready to receive and assist in handling the cases or boxes of freight in the wagons. Manifestly, if he had it in his knowledge, mind and memory, that there was an open elevator shaft behind him, he would not have walked backwards into it. There is nothing to indicate that he desired to commit suicide. If, therefore, he had actual knowledge that the elevator shaft went below the ground floor; that the elevator doors stood open; that the elevator car had been removed from the floor and thereby had uncovered the pit, it follows by inevitable logic that he must have forgotten the situation in the sudden emergency brought to him by the cry of Ziegler and the fall towards him of the cases or boxes. In this view of the situation, was it negligence on his part even if he had actual knowledge of the situation, that he unfortunately forgot the same for a moment? If, therefore, the circumstances are such that momentary forgetfulness of actual knowledge would have been excusable, Taylor must likewise be excused from like forgetfulness of any knowledge which may be imputed to him.

Mere temporary forgetfulness of known danger does not constitute contributory negligence as a matter of law; nor the fact that one's attention has been suddenly distracted in another

Arguments.

direction by a cause for which he is not responsible. 1 *Shearman & Redfield on Negligence,* 233; *Boyle v. Degnon McLane Const. Co,* 27 *N. Y. App. Div.* 311.

The doctrine that momentary forgetfullness of danger known to the plaintiff does not constitute contributory negligence which will, as a matter of law, bar recovery is fully stated and elaborately argued with authorities in the case of *Knoxville v. Cox,* 103 *Tenn.* 371, *et. seq.,* see also, *Bassett v. Fish, et. al,* 75 *N. Y.* 303; *Engel v. Smith,* 82 *Mich.* 5, *et. seq.;* *Peoples' Bank v. Morgolofski,* 75 *Md.* 443, *et. seq.*

As a matter of law, a person has the right to assume that the owner and operator of an elevator will exercise that high degree of care that the nature of the business demands and will see to it that the approaches to it are reasonably safe and are not negligently left open and that he may safely enter when he finds the door open without stopping to make a special examination. *Morrison v. Metropolitan Tel. Co.,* 69 *Hun.* 102, *et. seq.;* *Colorado Mortgage Co. v. Rees,* 21 *Col.* 439, *et. seq.;* *Chicago Exchange Building Co. v. Nelson,* 98 *Ill. App.* 189, *et. seq.;* *Shoninger Co. v. Edward Mann, by his next friend,* 219 *Ill.* 242, 76 *N. E.* 354; *Southern Building and Loan Asso. v. Lawson,* 97 *Tenn.* 367.

We are not forgetful that Quinn, one of the witnesses for the plaintiff, testified that when Ziegler hollered to Taylor he walked back; that he saw Taylor walk back foot over foot; that he saw him stepping back until he saw his hands go up and then knew that he had fallen. This testimony is not inconsistent with the more explicit testimony of the witness Ziegler. At any rate, for the purposes of a nonsuit and for the purpose of this argument, the language most favorable to the plaintiff must be taken as conclusive of the facts. The case at bar is a proper case to go to a jury.

ARGUMENT OF COUNSEL FOR DEFENDANT IN ERROR.

From the evidence in this case it is clear that at the time of the accident and just prior thereto there not only was no imminent danger facing and threatening Taylor, but there were no facts or circumstances from which a reasonable man would be justified in believing such danger to exist.

It is also clear that the deceased was acting under no impulse or imminent danger when he walked backward into the elevator shaft.

It is established by the evidence of practically all the witnesses who saw the accident that the vestibule, which formed the approach to the elevator and in which Taylor was standing for sometime prior to the accident, was well lighted, so that there was not only plenty of light for Taylor to see, but also for the witnesses, who testified as to what happened at and just prior to the accident. Taylor, for some length of time, was standing at two places in the vestibule before he walked backward into the shaft.

From the evidence, it is clear, that after Taylor came down on the elevator, after delivering the three boxes which he and his co-workers delivered to the Atlas Powder Company, he stood in a careless attitude near or leaning against the open doors on the Tenth Street side of the vestibule, but as the team was about to begin backing up, he moved to a position away from these doors and near the front edge of the platform, or floor of the vestibule.

From the testimony there was no connection between Taylor's action in walking backward and the falling of the boxes inside the wagon body. Taylor began to walk backward at or about the time that Quinn began to back his team and approach the vestibule. From Quinn's testimony, Taylor began to walk backward before the boxes fell.

None of the witnesses attempt to say, or intimate, that Taylor's action in walking backward was precipitate, hurried or sudden. There is nothing in the evidence to indicate that it was the sudden action of a man startled by falling boxes, or a warning cry, or of a man seeking to escape imminently impending danger. The falling of the box or boxes in the wagon body was not such an occurrence as created any dangerous situation for Taylor, nor was it an occurrence from which a reasonable man in Taylor's situation could or would reasonably infer imminent danger.

The evidence is that the dimensions of these boxes were four feet by three and one-half feet by one foot. They were standing on their narrow side, or edge in the front of the wagon body, which was fourteen feet long. It does not appear whether the

boxes stood up four feet or three and one-half feet from the floor of the wagon body, but it does appear, that when they fell over, the nearest part of the nearest box was "seven or eight feet at least from Taylor." Taylor was about three feet from the front edge of the vestibule.

The only suggestion of color for the claim that Taylor was in danger from the boxes when he walked backward into the shaft is from the testimony of Ziegler, who says he shouted "Look out!" as the boxes fell and that thereupon Taylor "stepped back to get out of the road of them." The words, "to get out of the road of them," are clearly not justified by the facts and can only be attributed to Ziegler's friendly zeal for the deceased. The facts clearly disclose that Taylor was not in the road of the boxes and could not have believed he was. Ziegler himself says that when he shouted "Look out!" he did not think the boxes would hit Taylor. It is true that on a motion for nonsuit the plaintiff is entitled to the benefit of that evidence which is most favorable to her, but this does not mean that she is entitled to the "language most favorable" to her. Evidence of facts and mere "language" are different things, especially so when the language is merely the expression of an opinion or an attempt to state the mental attitude of a person other than the witness, under circumstances where it is impossible for the witness to know such mental attitude. Especially is this true when the expression of opinion is wholly inconsistent with what the witness saw at the time and with other undisputed concomitant facts established by other witnesses,

The principle of law laid down by the courts of this state in the *Eaton case* and the *Simeoni case* have no application to the facts of this case. If in citing *Akers v. The City of New York*, and *Dyer v. Railway Company*, such citations, mean to suggest that the shouting by Ziegler of the words "Look out!" constituted a careless and negligent act on Ziegler's part, which contributed proximately to the accident, the obvious reply is that this negligence (if it was such) was not in a legal sense the "negligence of a third party," but was in fact the negligence of a fellow servant.

There is nothing in the evidence to justify a contention that

the shouting by Ziegler constituted negligence which contributed to the accident.

The opinion of the trial court does not mention the idea that the deceased was acting at the time he walked backward under the impulse of imminent danger. At the time of the argument of the motion for nonsuit, it was not urged by counsel for the plaintiff, or even suggested, that Taylor was so acting when he walked backward into the elevator shaft. Obviously, from the trial court's opinion, they did not think at that time that this element was involved in the case. Subsequently, a motion for new trial was made and fully argued by Mr. Handy, who had then come into the case, and this theory of imminent danger was then forcibly urged upon the trial court. After the full argument the trial court evidently still thinking that the theory of "imminent danger" was not justified by the facts of the case, denied the motion.

Counsel for plaintiff in error contend that Taylor did not know and was not chargeable with knowledge, that the elevator car had left its station at the vestibule floor, but that Taylor had a right to presume that the car had not left such station. This right of presumption is based, in counsel's argument, upon Taylor's right to rely upon the elevator operator doing his duty. Assuming this right of reliance to have existed and to have justified the presumption suggested by counsel, it is nevertheless evident that such a presumption cannot stand under the evidence in this case. Taylor therefore knew that the elevator man intended to take the desk and chairs up on the elevator. Taylor was standing in the small vestibule, ten feet three inches long by seven feet two and one-half inches wide when the elevator went up. It is impossible to conceive that Taylor, under these circumstances, did not have actual knowledge that, with the disappearance of the men and the furniture from the vestibule, the elevator ascended, regardless of the direction in which Taylor may have been looking. The argument of the counsel for the plaintiff in error to the effect that Taylor had no knowledge that the elevator shaft extended below the vestibule floor is forced and strained. Their argument,—"So far as the evidence discloses

this occasion was the first occasion on which Taylor had ever been in that place," is not justified by the evidence. While there is no direct evidence to show familiarity on Taylor's part with the surroundings, there is clearly indirect evidence to that effect.

The elevator shaft was a dangerous place regardless of whether it extended below the vestibule floor or not. The danger in such a place was both from above and below. A person entering such a shaft is as likely to be injured by a descending car as he is to fall. As a matter of common knowledge, it would be impossible for the floor of the elevator car to stop in a position flush with the floor of the vestibule without there being some space in the shaft below the floor of the vestibule to contain the framework, brakes and other machinery which is attached always to the bottom of an elevator car.

If Taylor had been in the reasonable use of his senses at the time he was standing in the vestibule before the accident, he had ample opportunity to see the open and descending shaft after the elevator car ascended with the desk and chairs and with the elevator doors left open.

Under the circumstances to which the court's attention has last been called, it is respectfully submitted that there is no reasonable opportunity for reasonable minds to differ and hence nothing for the consideration of the jury.

There is considerable question as to whether Taylor, at the time of the accident, so far as concerns his relation to the defendant, was an invitee or was a mere licensee.

In the *Article on Elevators* in 9 *R. C. L.* 1256, in discussing invitees, or persons on the premises of the owner of the elevator by invitation, it is stated to be the law that it is the duty of the owner to use ordinary care for the protection of such persons as may lawfully use the elevator to do business with a tenant of the building.

This, of course, is very different from the high degree of care which the owner of an elevator must exercise to avoid injury to passengers. *Stanwood v. Clancey*, 26 *L. R. A.* 1213 (case note).

Assuming that Taylor was an invitee, the duty imposed upon the defendant of exercising ordinary care with respect to him, did

not in any sense relieve Taylor of the duty of exercising such care as a reasonably prudent person would exercise under like circumstances for his own safety.

It is evident from all the evidence that while Taylor stood in the vestibule, after the return from taking up the first boxes, at least until the team began to back up, he was not working or paying attention to work and not using his senses in such manner as a reasonable man would do under like circumstances.

An attempt was made to develop out of the facts the idea that Taylor may have had actual knowledge of the danger and of his surroundings, but was momentarily forgetful thereof at the time of the falling of the boxes. And cases were cited to sustain the doctrine that "mere temporary forgetfulness of a known danger does not constitute contributory negligence."

Neither the cases cited nor the doctrine have any application to the case at bar. There is no evidence upon which can be predicated the theory that Taylor temporarily forgot a known danger. This whole theory as disclosed by the cases cited is based upon the idea of definite knowledge of a known danger at one point of time and then the occurrence of forgetfulness between the time when the knowledge of the danger was acquired and some subsequent period of time, with a space intervening, when the person is again brought in contact with the danger.

It was urged that "as a matter of law, a person has the right to assume that the owner and operator of an elevator will exercise that high degree of care that the nature of the business demands and will see to it that the approaches to it are reasonably safe and are not negligently left open, and that he may safely enter an elevator shaft when he finds the door open without stopping to make a special examination."

This proposition and the cases cited have no application to the case at bar. The proposition applies to cases of passengers approaching a passenger elevator and finding the door open. The case at bar does not involve the use by a passenger of a passenger elevator, but merely involves, in its aspect most favorable to the plaintiff, the use of a freight elevator by an invitee of the defendent. The owner is required to exercise with respect to

him only ordinary care, and not the high degree of care which is required of a carrier of passengers. 9 *R. C. L.* 1255, 1256.

The cases in 69 *Hun.*, 114 *N. Y.*, 21 *Colo.* and 98 *Ill. Ap.* are all distinguishable from the case at bar by the fact that they are cases of a passenger approaching a passenger elevator for the purpose of entering the same, with his eyes toward the elevator and not walking backward, and finding the elevator doors open.

The case in 219 *Ill.* is distinguishable from the case at bar by the existence of the element of darkness at the place where the injured person was at the time of the accident and where the elevator doors were left open.

The negligence of Taylor began not when he started to walk backward toward the elevator shaft, but immediately after he came down from delivering the first three boxes to the office of the Atlas Powder Company. When he was brought back to the vestibule by the freight elevator, after the first trip up, finding as he did that others had practically pre-empted the use of the elevator for the next trip, he should have passed out of the little vestibule with his co-workers, Quinn and Ziegler. He had no right to use the vestibule as a loafing place. His privilege there as an invitee extended only to the use of the vestibule for the purpose of entering the freight elevator or placing freight upon it. *Mau v. Morse*, 33 *Pac.* 283.

When Taylor came down after the first trip he found in the small vestibule space, ten feet by seven feet, two men, an office desk and some chairs.

The negligence of Taylor in remaining in the vestibule, under all the existing circumstances, and in so carelessly walking backward therein toward the shaft, which he either knew, or by the exercise of due care should have known, was open and unguarded, formed a continuous train of negligent conduct from the time he came down from the first trip until the accident, and all contributing proximately thereto.

Taylor came down in the elevator with his co-workers after delivering the three boxes to the Atlas Powder Company. The elevator doors were opened back against the storm doors which had previously been opened back against the north and south

walls of the vestibule. There were two elevator doors, each three feet, two inches wide. In opening and closing they therefore swung through practically half of the whole vestibule space. After Taylor came down and the elevator doors were opened, he stood for some space of time near or against the opened elevator door on the south side of the vestibule. He remained standing there while the desk and chairs were loaded on the elevator and the Foord-Massey men left the vestibule and until the elevator had ascended. It was in the daytime and the light was good in the vestibule. Under the proven facts, it is submitted that Taylor must have had actual knowledge of the facts that the car had ascended and that the elevator doors were open, and also that there was an open elevator shaft extending below the floor of the vestibule. All these things were in plain sight and he was standing or leaning against the door. If he did not have actual knowledge of these things, he is charged with such knowledge because a reasonable use of his senses would have disclosed them all to him. With this knowledge he evidently stepped away from the south side of the vestibule toward the front and center thereof as the wagon was about to be backed up, evidently changing his careless waiting attitude to one of preparation for expected work.

Among many cases of a general nature the following are some where the facts are quite similar in principle to the case at bar and in which the courts applied the law to the facts as did the court below. *Brudie, etc. v. Renault-Freres*, 138 *N. Y. Ap. Div.* 112; *Maxwell v. Thomas & Co.*, 31 *N. Y. Ap. Div.* 546; *Mau v. Morse, et al.* 33 *Pac.* 283; *Massey v. Seller, et al*, 77 *Pac.* 397; *Johnson v. Ramberg*, 49 *Minn.* 341, 51 *N. W.* 1043; *Kennedy v. Friedrich*, 168 *N. Y.* 379; *Beidler v. Branshaw*, 200 *Ill.* 425; *Gray v. Siegel-Cooper Co.*, 78 *N. Y. Ap. Div.* 118.

The proposition that where one knowingly places himself in a place of danger which he might easily have avoided, he assumes all the risks incident thereto, is so elementary as scarcely to need the citation of authority to support it. However, the following cases, among many, are given, viz: *Drier v. McDermott*, 141 *N. W.* 315, 319; *Coleman v. Smith Co.*, 74 *Atl.* 915.

CONRAD, J., delivering the opinion of the court:

The plaintiff in error appeals to this court on the ground that the court below erred in instructing the jury to find a verdict for defendant.

It is difficult to lay down a fixed rule to govern the question as to when a court is justified in taking away a case from a jury, and when, on the other hand it is the duty of the court to allow the jury to pass upon the evidence. Both courts and text writers have found difficulty in marking the line that should control, so that courts are driven to deal with the individual cases as they arise.

[1] In the case of *P., B. & W. R. R. Co. v. Gatta*, decided in this court in 1913, 4 *Boyce* (27 *Del.*) 56, 85 *Atl.* 729, 47 *L. R. A.* (*N. S.*) 932, Judge Woolley very clearly stated the law touching this question, in the following words:

"When the evidence in a case is admitted or not controverted and when the law as applied to that evidence is productive of but one legal result, it becomes the duty of the court, in the administration of justice, to bind the jury to render a verdict accordingly. To do otherwise would simply entail a postponement of the proper decision of the case, by a retrial ordered on a motion for a new trial, in the event the jury found against the facts."

This is the general doctrine long recognized and adopted in this, and other states.

In the case before us, the court below found that the husband of the plaintiff was guilty of contributory negligence proximately entering into and contributing to the accident which resulted in his death, and for that reason, directed a nonsuit as prayed for, but the nonsuit being refused, the court instructed the jury to find a verdict for defendant, which was done.

[2, 3] This court has reviewed the evidence in this case with much care. The facts proven are unusually clear, and there is but little, if any conflict or confusion in the evidence produced. The husband of the plaintiff, after going up in the elevator in the Du Pont Building, and assisting in the unloading of certain articles, was brought down to the platform in front of the elevator on the ·first floor of the building, where he remained for some minutes while the business in which he was engaged was interrupted

or delayed by the arrival and unloading of another team at the same platform. During this interruption the husband of the plaintiff remained continuously on the platform in front of the elevator which occupied a space about ten feet wide, seven feet deep and ten to twelve feet in height. The entire front of the space was open. The time was the middle of the afternoon of a February day. There being ample light the surroundings could be clearly seen. While plaintiff's husband stood on the platform, certain articles of furniture were taken up in the elevator, and the team to which the deceased was attached as helper, was being backed up to the outer edge of the elevator platform, from which certain boxes were about to be unloaded. In all of this there was nothing to distract, disturb or excite the husband of plaintiff; on the contrary he had every opportunity to observe his surroundings, and to see the open doors of the elevator and the shaft or sink hole that went below the first floor. It is shown that as the wagon was being backed to the outer door of the platform, certain boxes therein contained gave evidence of falling, and that some one in charge of the wagon gave a cry of warning. The end of the wagon containing four boxes was four to five feet from Taylor when fully backed up to the entrance of the platform in front of the elevator. The boxes toppled over, but within the wagon-body, and seven or eight feet distant from Taylor.

The boxes are described as being one foot thick, three and a half feet wide, and four feet high, and stood on end in the front part of the wagon.

The plaintiff's counsel in their brief and by their arguments, seek to impress this court with the doctrine, well established in the law, that where one is required to act suddenly and without time for reflection and thereby is injured, he is not held to the same degree of care and caution as if he had time for deliberation.

There can be no question but that this principle has been upheld by the courts of this state, and will be recognized as well founded law here and elsewhere.

But in the pending case this principle is not applicable because the evidence fails to establish that Taylor, the deceased,

was facing a danger that was either imminent or threatening. On the contrary it is clear that Taylor loitered about the platform for several minutes, a sufficient length of time for a load to be put in the elevator, and the elevator to leave the lower floor and ascend; and time sufficient for the driver of the team on the outside to reach the heads of his horses and back them to the doorway. From Taylor's position he must have seen all that was going on. The ascent of the elevator after being loaded with the desk, the open doors of the elevator shaft, the movements of the men and horses in front were all within reach of his observation. And being able to see, it is unreasonable to suppose he did not see. The duty was on him to see if he was in a position to see. Nor was there a sudden alarm or danger which tended to impel him to act quickly. There was no danger such as to excite or disturb a reasonable man in his position. There was no emergency calculated to produce fright or affect the judgment.

[4] With these facts so clearly established by the evidence, and not controverted, the conclusion is inevitable that the plaintiff's husband was not at the time of the accident in the exercise of that care and caution which it was his duty to observe in a place of danger such as confronted him; and that the trial court was justified in finding that Taylor's negligence was the proximate cause of the accident which led to his death.

The trial court therefore committed no error in giving binding instructions to the jury in favor of the defendant, and the judgment and proceedings of the court below are in all respects affirmed.